U. S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
FILED 6-14-11
LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NUMBER: 10-058 |
| v. | * | SECTION: "L" |
| MICHAEL G. MEANY | * | VIOLATION: 18 U.S.C. § 2251(a) |
| | | 18 U.S.C. § 2422(b) |
| | * | 18 U.S.C. § 1470 |
| | | 18 U.S.C. § 2252(a)(2) |

* * *

## FACTUAL BASIS

Should this matter proceed to trial, both the government and the defendant, **MICHAEL MEANY,** do hereby stipulate and agree that the following facts set forth a sufficient factual basis for the crimes to which the defendant is pleading guilty and that the government would prove the following beyond a reasonable doubt at trial:

The government would show that at all times mentioned in the Superseding Indictment, the defendant, **MICHAEL MEANY,** was a resident of the Eastern District of Louisiana, living in Metairie, Louisiana. The government would establish through self-authenticating evidence that the defendant was born August 5, 1971.

The government would present evidence and testimony that on October 29, 2009, Special Agents from the U. S. Department of Homeland Security Immigration and Customs Enforcement (ICE) encountered the defendant at his Lake Avenue apartment. The government would also

introduce evidence that the defendant voluntarily provided consent to agents to search his home, computers and cell phone. After receiving his *Miranda* rights, **MEANY** agreed to be questioned by the agents. ICE Special Agents Matt Wright and Lindsay Thomas would testify that **MEANY** told them the following information, among others, during their conversation.

- **MEANY** voluntarily admitted to federal agents that he used www.Myspace.com, www.Yahoo.com, www.MSN.com, AOL Instant Messenger (AIM), and www.Teenspot.com to communicate online.

- **MEANY** admitted to them that on www.Teenspot.com he used a profile of a fourteen- to fifteen-year-old boy, but only told his real age after he began chatting. **MEANY** said that his chats did not begin sexually, but they progressed and became sexual.

- **MEANY** told agents that he initially felt like a brother or a dad to the girls that he was talking to.

- **MEANY** said that he had a lot of sexual conversations with females under eighteen using the Internet.

- **MEANY** used a fourteen- or fifteen-year-old profile on www.Myspace.com and told the girls his real age after they started chatting. **MEANY** told Agents Wright and Thomas that he had a profile of a young boy because it was easier to get young girls to start chatting with him.

- **MEANY** stated that his typical conversation with an underage girl would begin casually. After he talked to them and felt like he knew them better, he would ask them if they were a virgin and what kind of stuff they had done. Meany then talked to the minor girls about sexual things he would like to do to them.

- **MEANY** said that he found the people that he added on www.Myspace.com by searching the accounts of other young girls with whom he was friends with on www.Myspace.com. **MEANY** said that he probably had close to two hundred (200) friends on www.Myspace.com and most were underage.

- **MEANY** estimated that he had phone sex with between ten and twelve underage girls and initially indicated that he had online sexually explicit conversations with between twenty and thirty underage females. **MEANY** later revised that estimate to the Agents and said that it could be more that one hundred.

- **MEANY** admitted that he has viewed child pornography using the Internet, but that he had never downloaded it. **MEANY** said that he used search terms like "Lolita" in search engines to find child pornography. When asked what Lolita meant, **MEANY** said that he guessed it meant "little girl."

- **MEANY** said that he searched for child pornography about once or twice a month and that he preferred images of females between the ages of thirteen and sixteen years old. **MEANY** later stated that he had received nude images on his cellular phone from approximately ten girls, but that he had only requested images from approximately three of them.

- **MEANY** said that he did not currently have an adult girlfriend and had not had one for a longtime. **MEANY** stated that he originally wanted a friend, then "it got out of hand." **MEANY** told the agents that he had sexual thoughts about young girls since he was in his twenties and that he feels like he relates to the young girls. **MEANY** also told agents that he does not feel like he hurt any of the girls that he talked to or met.

- **MEANY** said he had last viewed child pornography on the Internet the week prior to this interview.
- **MEANY** stated that he knew child pornography was wrong.

ICE Special Agents Matt Wright and Lindsay Thomas would testify that **MEANY** made the following statements to them with respect to Victim 2.

- **MEANY** had sex with Victim 2, a fifteen-year-old girl from Turkey Creek, Louisiana, who he had also met online. **MEANY** indicated that he started chatting with Victim 2 in April or May of 2009, on www.Teenspot.com and that she knew his real age.
- **MEANY** said he knew that Victim 2 was under the age of eighteen when he began chatting with her on www.Teenspot.com. **MEANY** said that he started talking to her as a friend but progressed to talking to her about her virginity and other sexual things.
- **MEANY** had phone sex with Victim 2 a few times using his cellular phone.
- **MEANY** admitted that he drove approximately three and a half hours to see Victim 2 on three separate occasions.
- Initially, the first time he and Victim 2 met, they only kissed. **MEANY** later admitted that he had touched her breasts and put his fingers in her vagina.
- **MEANY** said that the second time he saw Victim 2, he had sex with her in a camper trailer on her family's property.
- **MEANY** performed vaginal and oral sex with Victim 2 and tried to sodomize her.

- **MEANY** said that the third time he traveled to see Victim 2, Victim 2 and her sixteen- year-old friend from Michigan "wanted to have a threesome." **MEANY** had sexual intercourse with Victim 2 and that her friend was in bed naked with them, but did not engage in sexual activity.
- **MEANY** admitted to having vaginal sexual intercourse with a fifteen-year-old girl from Turkey Creek, Louisiana, referred to as Victim 2 in the superseding indictment.

Credible testimony and extensive documentation would establish that **MEANY** targeted Victim 2 and that he manipulated her into engaging in unlawful sexual acts with the defendant. The government would introduce cell phone pictures, taken by the defendant of Victim 2 with her blouse off and her breast fully exposed. The government would present evidence to establish the defendant employed coercive techniques to manipulate Victim 2. Using the Internet, cell phones and other facilities of interstate commerce, the defendant engaged in illegal sexual acts with Victim 2 on at least two occasions.

ICE Special Agents Matt Wright and Lindsay Thomas would testify that **MEANY** made the following statements to them with respect to Victim 3:

- The first time that he communicated online with an underage female, was August of 2008, on www.Stickcam.com. **MEANY** began communicating with Victim 3, a thirteen-year-old female from Maine.
- **MEANY** told agents that while communicating with 13-year-old Victim 3, he sometimes talked to her about sexual acts that he wanted to perform on her and was aroused by the conversations.

**MEANY** received naked images of Victim 3 on his cell phone (504-508-1553).

Credible documentary and testimonial evidence would be introduced at trial to prove that the defendant also used coercive and deceptive manipulation to target Victim 3, a thirteen-year-old girl from Brewer, Maine. Victim 3 would testify that the defendant transmitted through his web camera images of him masturbating to the thirteen-year-old victim while he required her to insert different instrumentations into her vagina. Documentary evidence, including at least 27 notes or scraps of paper belonging to the defendant, would be introduced to show that the defendant also attempted to control all aspects of Victim 3's life by monitoring her online activity, monitoring her via her cell phone while she attended middle school, researched where she attended the middle school and conducted web-based searches for directions to her residence. This evidence would show that the defendant continually monitored Victim 3's email accounts, obtained her passwords to do so, attempted to and did communicate with other individuals Victim 3 electronically communicated with and maintained information on Victim 3's associates.

Via stipulation, three profiles of the defendant on the website www.teenspot.com would be introduced into evidence. The profiles, where the defendant referred to himself as "preteenlover," "mcowboy," and "Robracer," would each indicate dates of birth that made the defendant the age of 14 at the time.

Other evidence would be introduced to establish that the defendant specifically targeted minor girls. Documents found in the possession of the defendant, his www.myspace.com postings obtained via search warrant, and items found on his and other's cell phone would provide conclusively that the defendant routinely lied to young girls in social networking websites in an effort to satisfy his own deviant sexual predilections. **MEANY,** through deceptive practices, coerced, manipulated, and deceived his unsuspecting victims into providing him

sexually explicit images and videos. Those images, which would be introduced into evidence, would depict minors' vaginas, and a picture of a minor girl urinating.

The government would present evidence that the defendant knowingly produced child pornography and the evidence of the defendants's production of child pornography was found on the defendant's Samsung cell phone that was manufactured in China. This child pornography produced by the defendant traveled in interstate commerce because Victim 1 resided in Mississippi and these images were transmitted across state lines.

Victim 1 would testify that on or about March 31, 2009, **MEANY** persuaded her to take sexually explicit images of her vagina and send those images to his cell phone. Victim 1 would testify that she had just turned 15 years old when **MEANY** convinced her to produce this child pornography.

Special Agent Tonya Barrett is an expert in Mobile Digital Forensics with the U. S. Department of Homeland Security. Agent Barrett would testify that she recovered four sexually explicit images of Victim 1 from **MEANY's** Samsung cell phone. Agent Barrett would also testify that these sexually explicit images were saved to **MEANY's** cell phone, along with numerous other images of children, and were not deleted by **MEANY**.

ICE Special Agent James Podboy, a Computer Forensic Agent would introduce evidence that **MEANY** knowingly used his computer to search for and receive images of child pornography. Agent Podboy would explain the manner in which **MEANY** downloaded images of child pornography, including images of young boys engaged in sexually explicit conduct. Further, Agent Podboy would testify that a forensic search of **MEANY's** computer media revealed greater than 600 images depicting the sexual victimization of children, including

prepubescent children being vaginally penetrated. Dr. Julie Jackson from Children's Hospital would testify that images of child pornography found on the defendant's computer were of children as young as four to five years old.

Testimony and documentary evidence would establish the defendant had approximately 1,277 "friends" on Teenspot.com and he had approximately 245 "friends" on Myspace.com.

Forensic evidence consisting of medical testimony, law enforcement officers, and supporting documentation would establish that some of the child victims depicted in the images possessed by **MEANY** were of real, identifiable victims, less than the age of eighteen (18) at the time the child pornography was created.

Testimony would establish that some of the child victims depicted in the materials possessed by **MICHAEL MEANY** were of prepubescent children less than 18 years of age; to wit: less than twelve (12) years old and that the images of the child victims were engaged in "sexually explicit conduct" as defined in Title 18, United States Code, Section 2256. These images included pictures of adult males inserting their penises into the vaginas and mouths of prepubescent victims. All of the images of child pornography possessed by the defendant would be introduced through the testimony of ICE agents.

Further, the government would present evidence that would establish that the images of child pornography had been transported in interstate and foreign commerce via computer.

The government would introduce into evidence jail house tape recordings of the defendant making telephone calls to Victim 2 after his arrest for the instant offenses. These tape recordings would demonstrate the controlling, manipulative relationship the defendant has with a minor girl.

In these conversations, the defendant attempts to have Victim 2 lie to her parent by erasing any evidence that he has called from the telephone, he continued to lie to Victim 2 about the events which led up to his being incarcerated, he tells Victim 2 the amount of time he is facing in an obvious attempt to evoke sympathy from Victim 2 and seeks to learn what Victim 2 told law enforcement agents when they sought Victim 2's statement.

Further, the government would show through testimony and documentary evidence that the equipment used by the defendant to acquire the child pornography was transported in interstate or foreign commerce.

_____
MICHAEL MEANY
Defendant

_____
ARTHUR A. LEMANN, IV
Counsel for Defendant

_____
BRIAN M. KLEBBA
Assistant United States Attorney

_____
PATRICE SULLIVAN
Assistant United States Attorney

DATE

DATE 6/14/11

DATE 6/14/11

DATE 6/14/11